

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### Miami Division

**IN RE: MANAGED CARE LITIGATION**

---

THIS DOCUMENT RELATES ONLY TO
PROVIDER TRACK CASES

MASTER FILE NO.
**00-1334-MD MORENO**
Magistrate Judge Theodore Klein

_____/

**AND**

CHARLES B. SHANE, M.D., et al.,

**Case No. 04-21589-Civ-MORENO**
Magistrate Judge Theodore Klein

    Plaintiffs,

vs.

HUMANA, INC., et al.,

    Defendants.

_____/

**PLAINTIFFS' RESPONSE TO DEFENDANTS' JOINT OBJECTIONS TO MAGISTRATE JUDGE KLEIN'S MAY 31, 2005 REPORT AND RECOMMENDATION THAT PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION IN *SHANE I* BE GRANTED IN PART AND DENIED IN PART AND THAT CLASS CERTIFICATION IN *SHANE II* BE GRANTED IN PART AND DENIED IN PART**

Pursuant to Fed. R. Civ. P. 72(b), S.D. Fla. Mag. J. Rule 4(b), and 28 U.S.C. § 636(b)(1), Plaintiffs respond below to Defendants' Joint Objections to Magistrate Judge Klein's May 31, 2005 Report and Recommendation That Plaintiffs Amended Motion for Class Certification in *Shane I* Be Granted In Part And Denied In Part And That Class Certification In *Shane II* Be Granted In Part And Denied In Part, which appears as DE.4222 in *Shane I* and DE.75 in *Shane II*.

I.

## THE CLASS PERIOD SHOULD COMMENCE ON JANUARY 1, 1996

In section I of their objections Defendants claim Magistrate Judge Klein erred in recommending January 1, 1996 as the starting date for the class period, arguing instead that it should be August 14, 1996 – 4 years back from the date Plaintiffs filed their Amended Complaint in MDL 1334 (DE.167). The three reasons Defendants believe Judge Klein erred in this regard are that the conspiracy claim alleged in Plaintiffs' Amended Complaint does not relate back to prior cases because it is based upon a different set of operative facts; that there are not enough earlier cases for it to relate back to, and that allowing a January 1, 1996 starting date would impermissibly allow Plaintiffs to offer evidence relating to wrongful conduct occurring before the date some Defendants are subject to liability. As set forth below, however, these arguments are misguided.

First, in terms of relation back, Rule 15(c)(2) of the Federal Rules of Civil Procedure specifically provides that amended pleadings relate back to the date of the original pleading if "the claim ... asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." The fact that a later complaint changes or adds a new legal theory is of no consequence. *See, e.g., Alpern v. UtiliCorp United, Inc.*, 84 F. 3d 1525, 1543 (8th Cir. 1996)(if claim asserted arises out of conduct, transaction or occurrence set forth in the original pleading it relates back even though it may "change the legal theory of the action")(citations omitted); *FDIC v. Bennett*, 898 F. 2d 477, 480 (5th Cir. 1990)("[U]nder

2

Rule 15(c) the complaint properly related back to the filing of the original complaint even though the theory of recovery was wholly different"). Here, the provider actions transferred from around the country all complained about the claims processing practices of the Defendants, and some alleged RICO theories to redress their grievances. As a result, Judge Klein found that the claims asserted in the Amended Complaint related back to these earlier filings under Rule 15(c). (DE.4222 at 15; DE.75 at 15).

Defendants say this was error because the August 14, 1996 Amended Complaint was the first complaint in which they were accused of conspiring with one another, which is true, and that this amounts to a different set of operative facts that precludes relation back under 15(c), which is not. Conspiracy claims do relate back to prior claims accusing the defendant of the underlying wrong he is later alleged to have committed in the context of a conspiracy. *See, e.g., BBD Transp. Co. v. Southern Pac. Transp. Co.*, 627 F. 2d 170, 173 (9th Cir. 1980)(amended complaint adding claim of conspiracy to illegally reduce motor carrier rates relates back to filing of complaint charging illegal reduction of rates); *Chase Manhattan Bank, N.A. v. Credit Lyannais (Suisse) S.A.*, 2001 WL 394845 (S.D. N.Y. 2001)(claim for conspiracy to convert relates back to earlier conversion claim); *Mask v. Johnson*, 1997 WL 662337, *2 (S.D. N.Y. 1997)(§ 1983 conspiracy claim relates back to earlier claim based upon the same physical abuse); *Brosmore v. City of Covington*, 1993 WL 762881, *8-9 (E.D. Ky. 1993)(§ 1983 conspiracy claim relates back to earlier claim based upon the same racial discrimination).

The lone case Defendants cite to support their argument is *Tran v Alphonse Hotel Corp.*, 281 F. 3d 23 (2d Cir. 2002), but that case actually supports Judge Klein's

3

recommendation. Mr. Tran originally sued his two related employers for violating the Fair Labor Standards Act and for breach of contract, common law fraud and unjust enrichment – all arising out of their requiring/duping him into working 90 hour weeks without proper compensation. Later, he attempted to amend his complaint to add a RICO conspiracy claim based upon predicate acts of bribery when he found out his employers had been bribing union officials to get away with their abusive employment practices. Relation back was ultimately rejected because bribing union officials had not been part of the original set of operative facts, but pointedly not because a RICO theory or the RICO conspiracy claim was new. *Id.* at 36. Indeed, the Second Circuit made the very point Judge Klein makes when it noted:

> If the original complaint referred to general acts of fraud or other predicate acts that might support a RICO claim, then a later amendment would 'relate back' to the original complaint. ... [e]ven if ... such an act of fraud was not ... described as part of a RICO conspiracy ....

*Id.* at 36 (citations omitted).

The second prong of Defendants' objection – that not all of the Defendants had been sued by providers in the transferred cases prior to January 1, 2000 (so that the four (4) year period of limitations does not go back to January 1, 1996 for each Defendant) – is also factually correct but does not point to changing the commencement date for the class period to August 14, 1996. The lay of the land is that: Humana and CIGNA were sued in Alabama in *Mangieri* on December 7, 1999; Humana was sued in Kentucky in *Shane* on January 5, 2000; PacifiCare was sued in California in *Klay* on May 24, 2000; PacifiCare, HealthNet (then Foundation) and WellPoint (Blue Cross of California) were

4

sued in California by the California Medical Association on May 25, 2000; and United was first sued by providers in the Amended Complaint in this case on August 14, 2000. (DE.4256 at 3-6).

The way to handle this progression of limitation periods is not, however, to choose the shortest, i.e., begin the class period on August 14, 1996 and thereby exclude class members and claims that exist against various Defendants before that date. Rather, the way to handle it is to include all class members and claims going back to January 1, 1996 so that the applicable claims can be asserted against each Defendant as of the date their responsibility begins – ranging from January of 1996 for Humana to August 14, 1996 for United. This is the point Judge Klein was making when he noted that "variations in commencement dates can be reflected in any judgment entered against these Defendants." (DE.4222 at 15 n.14; DE.75 at 15 n.14).

Indeed, Defendants admit that, if assessing damages was the only issue, "Plaintiffs might well be correct." (DE.4256). But they attempt to banish the unthinkable (Plaintiffs being correct) by arguing that allowing the class period to be governed by the longest rather than the shortest limitations period impermissibly subjects them to liability evidence relating to conduct that predates the period during which they are subject to liability. This is a specious argument, and the only authority Defendants cite to support it is a generic reference to the fact that evidence of other wrongs is inadmissable under Fed. R. Evid. 404, and that, when admissible under Rule 404(b), it must be vetted by the prejudice versus probative value analysis required by Fed. R. Evid. 403. *Bhaya v. Westinghouse Elec. Corp.*, 922 F. 2d 184, 188-189 (3d Cir. 1990). But other (earlier)

5

conduct that is part of the same RICO conspiracy and pattern of racketeering does not amount to evidence of other wrongs under Rule 404. *See, e.g., United States v. Miller*, 116 F. 3d 641, 682 (2d Cir. 1997)(Acts done in furtherance of RICO enterprise or conspiracy are not other wrongs within the meaning of Rule 404(b)); *United States v. Cooper*, 91 F. Supp. 2d 79, 81-82 (D. D.C. 2000)(evidence relating to RICO conspiracy is not evidence of other wrongs within the meaning of Fed. R. Evid. 404); *United States v. Conley*, 878 F. Supp. 751, 755-756 (W.D. Pa. 1994)(same). And the way the statute of limitations works in an ongoing RICO conspiracy is that a plaintiff may recover for any injury caused within the four (4) year limitation period by proving RICO violations that occurred before the four year period. *See, e.g., Love v. National Medical Enterprises*, 230 F. 3d 765, 774 (5th Cir. 2000)("it would seem illogical to conclude that, under civil RICO, a plaintiff may not recover for injuries incurred within the limitations period, merely because they result from acts that are part of a continuing pattern of similar acts that caused other, similar injuries outside that period.")(emphasis added); *Bankers Trust Co. v. Rhoades,* 859 F. 2d 1096, 1103 (2d Cir. 1988)("the logical result is that a plaintiff may sue for any injury he discovers or should have discovered within four years of the commencement of his suit, regardless of when the RICO violations causing his injury occurred.").

For all of the above reasons, Magistrate Judge Klein's recommendation that the class period commence on January 1, 1996 is a sound one.

6

## II.

## THE CLASS PERIOD RUNS
## THROUGH SEPTEMBER 30, 2002

Although Plaintiffs do not agree with the arguments Defendants make concerning why a class period extending beyond September 30, 2002 cannot be certified, those arguments need not be addressed. As they have already stated, Plaintiffs' intent in filing *Shane II* was not to extend the class period in *Shane I* but to replicate it. (DE.41 at 16). The date of certification in *Shane I* was September 30, 2002, and that is the date Plaintiffs have and will continue to use in their proposed class notices.

## III.

## CERTIFICATION OF PLAINTIFFS'
## § 17200 CLAIMS IS PROPER

Defendants do not object to Magistrate Judge Klein's recommendation that Plaintiffs' California Business and Professions Code § 17200 claims should be (or remain) certified, or to his reasoning:

> The predominance problems identified by the Eleventh Circuit in connection with Plaintiffs' breach of contract claims do not exist with § 17200 claims. This is because the § 17200 claims are fraud-based, not contract-based.

(*Shane I* – DE.4222 at 17; *Shane II* – DE.75 at17).

Rather, Defendants take the opportunity to make another pitch for what they want the second, damage phase of the case to look like, taking exception to Judge Klein's observation that:

> The damages sought here may be determined in the same manner as Plaintiffs' RICO damages; that is, by examining

7

> Defendants' records and thereby calculating their profits received from any alleged wrongful conduct.

(DE.4222 at 17; DE.75 at17). However, apart from the fact that the Court will be the one to interpret the Eleventh Circuit's pronouncements regarding proof of damages when the time comes, Magistrate Judge Klein's statement does not alter the Eleventh Circuit's holding with regard to proof of damages. In the context of Plaintiffs' RICO fraud claims, as opposed to their breach of contract claims, which Defendants continue to conflate, the Eleventh Circuit held:

> In this case, even though individualized damage inquires are necessary, many of them can be accomplished simply through reference to the HCFA-1500 forms or the HMO's records of which patients registered with doctors who are reimbursed through a capitation system. *Cf. Roper v. Consurve, Inc.*, 578 F. 2d 1106, 1112 (5th Cir. 1978)('While it may be necessary to make individual fact determinations with respect to charges, if that question is reached, these will depend on objective criteria that can be organized by a computer, perhaps with some clerical assistance').

*Klay v. Humana, Inc.*, 382 F. 3d 1241, 1260 (11th Cir. 2004). It was only in the event that such proof ends up being insufficient that the Eleventh Circuit went on to note:

> In addition, even if many plaintiffs' claims require corroboration and individualized consideration, such inquiries are outweighed by the predominating fact that the defendants allegedly conspired to commit, and proceeded to engage in, a pattern of racketeering activities to further their Managed Care Enterprise.

*Id.* In short, Judge Klein was right that Plaintiffs may use Defendants' records to calculate their damages. Whether more ends up being necessary remains for the Court to determine when the time comes.

8

Finally, presumably in an attempt to plant the "more is necessary" seed in advance, Defendants give their "most obvious" example of the need to look at individual records – one in which Dr. Klay submitted a bill for removal of a lesion 4 centimeters or larger (CPT code 11426) which Defendants they say the records show was much smaller. Defendants' example, however, demonstrates just the opposite. The example to which Defendants point is not part of Plaintiffs' case. Plaintiffs have intentionally limited the edits and claims they dispute to those involving objective, cost driven payment decisions made by the Defendants rather than those involving subjective interpretations. These edits are defined by the Disputed Edits Lists. ("DEL"). Defendants' example does not involve an edit on the DEL, i.e. being challenged by Plaintiffs. Indeed, Plaintiffs seek no damages for denial of the CPT code cited by Defendants. Beyond this, as set forth in Plaintiffs' Response to Defendants' Omnibus Motion for Summary Judgment, Plaintiffs are only asserting § 17200 claims for monetary relief (disgorgement and restitution) in the context of capitation claims, placing the best example Defendants can come up with to support their premature argument even further out in left field. (DE.4076 at 123).

For the above reasons, Magistrate Judge Klein's recommendation regarding certification of Plaintiffs' § 17200 claims should be adopted, not rejected.

IV.

ASO CLAIMS ARE INCLUDED IN THE CLASS CLAIMS

Defendants' fourth objection to Magistrate Judge Klein's R&R regarding certification is that he did not exclude ASO claims – claims processed by Defendants on

behalf of self-funded plans rather than on their own account – from the class definitions. But those claims should not be excluded.

The controversy over these claims, which has surfaced in several contexts, stems from the Plaintiffs' use of the term "insureds" in their proposed class definitions. However, Plaintiffs' use of that term in defining the class – and presumably the Court's use of that term in its initial class certification order – was never intended to exclude claims that Defendants processed as part of their ASO business. First, easily understood "plain English" is required by Rule 23 of the Federal Rules of Civil Procedure so that potential class members can readily determine if they are part of the class. When doctors agree to treat Defendants' patients, and are told they will be paid for rendering medically necessary covered services in accordance with standard CPT coding procedures, Defendants do not differentiate between patients they literally insure and those covered by self-funded plans they are administering. All of these patients are the Defendants' "insureds" to the doctors, and they all show up with Defendants' health insurance cards.

Second, in addition to the fact that Defendants' representations and the doctors' expectations are no different, the back-side of Defendants' fraudulent scheme is the same as well. After treating a patient, doctors submit their bill and the Defendants process it using the same computer programs and edits irrespective of whether they directly insure the patient or are processing the claim on behalf of a self-funded plan. And the doctors are damaged in the same way. All of this amounts to the same RICO violation irrespective of who the ultimate payor is.

Defendants suggest that the Court has already decided to ignore these realities by denying Plaintiffs' motion for leave to file a third amended complaint, and by ruling against them in a discovery dispute concerning ASO data. But that is not the case. The denial of Plaintiffs' motion for leave to amend was not based on the substance of the amended complaint, which attempted to add another defendant and make other changes, but rather on its timing. In fact, in its Order Denying Plaintiffs' Motion for Leave to Amend Complaint the Court specifically noted that Plaintiffs had been given the opportunity to amend their complaint on more than one occasion, and that the denial was based upon "efficient" administration of justice. (DE.1813). Defendants' ASO business was never mentioned. Thus, not only do the events relating to denial of the motion for leave to amend fail to support Defendants' position, but the fact that the ASO issue was addressed in the proposed amendment demonstrates that Plaintiffs believed the claims were part of the case but wanted to make it clearer in light of the contrary position taken by Defendants.

Similarly, the Court did not eliminate Defendants' ASO business from the case when it rejected Plaintiffs' objections to Special Master Sorondo's Report and Recommendation of May 28, 2004. When they realized several Defendants had not produced ASO claims data in discovery, Plaintiffs moved to compel. The special master recommended denial of the motion. The Court adopted that Report and Recommendation on the basis that Plaintiffs' motion was untimely, not because ASO business was outside the scope of the litigation. In fact, the Court specifically reserved ruling on that issue, stating "[t]he Court here need not rule as to whether ASO businesses are included in the

11

definition of who is insured by Defendants in the class action because the Court finds that Plaintiffs' motion to compel is untimely." (DE.3445). While denial of Plaintiffs' motion seeking ASO data impacts Plaintiffs' ability to establish all of the damages caused by some of the Defendants, Plaintiffs have ASO data for other Defendants and intend to establish the damages caused by their RICO violations in this context as part of the second phase of the litigation.

Based upon the above, Plaintiffs submit that ASO claims should be deemed part of the class claims.

V.

### PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF WITH REGARD TO DEFENDANTS' PHARMACY RISK POOL PRACTICES SHOULD BE CERTIFIED

In Section V of their objections Defendants suggest that, to the extent Plaintiffs' claim for injunctive relief with respect to Defendants' pharmacy risk pool practices relates to a negotiated component of overall capitation rates, it should be covered by Magistrate Judge Klein's recommendation that claims based on the actuarial soundness of Defendants' capitation rates should not be certified rather than his recommendation that the remainder of Plaintiffs' capitation claims should be certified.

Judge Klein agreed with this proposition in his June 23, 2005 Addendum and Clarification of the May 31, 2005 R & R, so, to the extent pharmacy risk pool practices are a component of actuarial soundness, Plaintiffs adopt their objection to the R & R recommending against certification of those claims. (DE.4262). Defendants admittedly represent that they pay actuarially sound capitation rates and/or fail to disclose that they

12

do not. The fact that these misrepresentations/omissions take place, *inter alia,* in the context of negotiations neither absolves the Defendants from their fraudulent conduct nor destroys predominance by requiring analysis of the terms of each capitation agreement. Nor does the fact that actuarial soundness may be impacted by various factors in addition to the base capitation rate, for example by how drug costs are handled, undermine the uniformity of the actuarial soundness misrepresentation/omission.

Beyond this, however, Plaintiffs' claim for injunctive relief with regard to Defendants' pharmacy risk pool practices addresses a discrete misrepresentation/omission and presents a discrete certification issue. Whatever the details of the precise arrangements Defendants make to allocate pharmacy costs, Defendants commonly do not disclose that the costs they pass along to doctors are not their actual costs, i.e., do not reflect the substantial rebates they receive from pharmaceutical companies. As injunctive relief, Plaintiffs ask that Defendants be required to deal in true costs or disclose that they are not. This does not as, Defendants suggest, impact negotiated rates. Rather, it simply requires truthful negotiations.

Moreover, the concern which led Magistrate Judge Klein to conclude that claims based upon actuarial soundness should not be certified – that individual questions of fact specific to each contract will predominate over common questions – does not control here. Predominance is a requirement for certification under Fed. R. Civ. P. 23(b)(3), not under Rule 23(b)(2). The latter only requires that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a

whole." Plaintiffs have previously requested Rule 23(b)(2) certification of their claims for injunctive relief (e.g. DE.2050 at 37), and, now that the pharmacy risk pool claim involves solely injunctive relief, such certification is clearly appropriate. *See, e.g., Allison v. Citgo Petroleum Corp.*, 171 F. 3d 402, 411 (5th Cr. 1998). Accordingly, the claim should remain part of the class claims.

VI.

THERE IS NO BASIS TO OBJECT TO THE
REPORT AND RECOMMENDATION AS IT
RELATES TO ANTHEM AND COVENTRY

Defendants' final "objections" to Magistrate Judge Klein's R & R regarding certification are that it fails to conduct the requisite rigorous analysis with regard to claims against Anthem and Coventry, and that it fails to comply with the Court's January 6, 2005 order (DE.3667) requesting supplementation of the Report and Recommendation Granting Motion for Class Certification as to Anthem and Coventry in light of the Eleventh Circuit's decision in *Klay v. Humana, Inc.*, 382 F. 3d 1241 (11th Cir. 2004). (DE.3009). These are specious objections.

First, the requisite rigorous analysis concerning certification of Plaintiffs' claims against Anthem and Coventry was conducted by Magistrate Judge Klein in his March 2, 2004 Report and Recommendation Granting Motion for Class Certification as to Anthem and Coventry. (DE.3009). Both Coventry and Anthem re-raised their objections to that R & R in response to Plaintiffs' Amended Motion for Class Certification (DEs.3604, 3612), and Magistrate Judge Klein considered them, rejected them, and adopted his prior analysis:

14

> Anthem contends that certification of a Global Fee for Service Class against it should be denied for the reasons discussed in the pending objections to the undersigned's R & R recommending class certification as to Anthem and Coventry in <u>Shane I</u>. The Court rejects Anthem's arguments and readopts and incorporates herein the reasoning set forth in the R & R recommending certification as to Anthem.
>
> * * *
>
> Coventry reasserts the arguments set forth in its objections to the undersigned's R & R recommending certification as to Anthem and Coventry. The Court rejects Coventry's arguments and readopts and incorporates herein the reasoning set forth in that R & R.

(DE.75 at 23, 25). There is no requirement that Judge Klein regurgitate his prior rigorous analysis.

Second, Judge Klein's initial R & R *was* supplemented to reflect the Eleventh Circuit's decision in *Klay* by the very R & R Defendants now object to. The Court not only requested supplementation of Judge Klein's original R & R regarding certification of the claims against Anthem and Coventry, but referred Plaintiffs' Amended Motion for Class Certification (DE.3525) to him as well. (DE.3652). The very purpose of that motion was to affect the changes in class certification necessitated by the Eleventh Circuit's decision in *Klay*, and Judge Klein's R & R with regard to that motion made the modifications he believed were required as to Anthem and Coventry as well as the other Defendants.

Finally, on June 23, 2005, Magistrate Judge Klein entered a Supplemental Report and Recommendation Granting Motion for Class Certification As To Anthem and Coventry, confirming the above. Thus, in the final analysis, all Anthem and Coventry are really doing is urging the Court to do what it is going to do anyway – make the required

15

*de novo* review of Judge Klein's certification recommendations based upon the record, Defendants' objections, and Plaintiffs' responses thereto. (DEs.3157, 3164). That is no objection at all.

## CONCLUSION

For the above reasons it is respectfully submitted that, with the exception of those aspects previously objected to by the Plaintiffs, Magistrate Judge Klein's May 31, 2005 certification recommendations should be adopted, and Plaintiffs' Amended Motion for Class Certification should be granted in *Shane I* and *Shane II*.

Respectfully submitted this 24th day of JUNE, 2005.

Harley S. Tropin (Fla. Bar No. 241253)
Janet L. Humphreys (Fla. Bar No. 607258)
Adam M. Moskowitz (Fla. Bar No. 984289)
KOZYAK TROPIN & THROCKMORTON
2525 Ponce de Leon, 9th Fl, Coral Gables, FL 33134
T: 305-372-1800 / F: 305-372-3508
Co-Lead Counsel for the Provider Plaintiffs

James B. Tilghman, Jr. (Fla. Bar No. 207209)
STEWART TILGHMAN FOX & BIANCHI, PA
1 SE 3rd Avenue, Ste 3000
Miami, FL 33131-1764
T: 305-358-6644 / F: 305-358-4707

Archie C. Lamb, Jr. (Fla. Bar No. 742597)
LAW OFFICES OF ARCHIE LAMB
2017 - 2nd Ave. North, Birmingham, AL 35203
Co-Lead Counsel for Provider Plaintiffs

Dennis G. Pantazis
WIGGINS CHILDS QUINN & PANTAZIS
301 - 19 Street North, Birmingham, AL 35203

Joe R. Whatley, Jr.
WHATLEY DRAKE
2323 2nd Avenue North, Birmingham, AL 35203

Aaron S. Podhurst
PODHURST ORSECK
25 W. Flagler St., Ste 800, Miami, FL 33130
Liaison Counsel for Plaintiffs

Kenneth S. Canfield
DOFFERMYRE SHIELDS CANFIELD KNOWLES & DEVINE
1355 Peachtree St., Ste 1600, Atlanta, GA 30309

Nicholas B. Roth
EYSTER KEY TUBB WEAVER & ROTH
402 E. Moulton Street, Decatur, AL 35601

J. Mark White
WHITE ARNOLD ANDREWS & DOWD
2025 - 3rd Avenue North, Ste 600
Birmingham, AL 35203

Edith M. Kallas / Joseph P. Gugliemo
MILBERG WEISS BERSHAD & SCHULMAN
One Pennsylvania Plaza, New York, NY 10119

Robert Foote

Guido Saveri / Cadio Zirpoli

16

FOOTE & MEYERS
416 S. 2nd Street, Geneve, IL 60134

SAVERI & SAVERI
111 Pine Street, Ste 1700, San Francisco, CA 94111

Jeffery A. Mobley
LOWE MOBLEY & LOWE
1210 - 21st Street, Haleyville, AL 35565

James E. Hartley, Jr.
DRUBNER HARTLEY & O'CONNOR
500 Chase Parkway, 4th Fl., Waterbury, CT 06708

Mark Gray
GRAY & WEISS
1200 PNC Plaza / 500 West Jefferson
Louisville, KY 40202

---

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on this 24th day of JUNE, 2005, a true copy of the foregoing was served via hand-delivery to: Edward Soto, Esq., Weil Gotshal & Manges, LLP, 1395 Brickell Avenue, 12th Floor, Miami, FL 33131 (Defense Liaison Counsel); and via e-mail on all parties of record on the 2/08/05 Service List and a hard copy to the following counsel:

Humana, Inc. and Humana Health Plan, Inc.
K. Lee Blalack
O'Melveny & Myers, LLP
1625 Eye Street, NW
Washington, DC 20006-4001

WellPoint Health Networks, Inc.
Stan Blumenfeld
O'Melveny & Myers, LLP
400 South Hope Street
Los Angeles, California 90071

Coventry Health Care, Inc.
Thomas C. Zielinski
2751 Centerville Road, Suite 400
Wilmington, Delaware 19808

United Health Group and United Health Care
Edward Soto
Weil Gotshal & Manges LLP
1395 Brickell Avenue, Suite 1200
Miami, Florida 33131

Health Net, Inc.
R. Ryan Stoll
Skadden Arps Slate Meagher & Flom, LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606

PacifiCare Health Systems, Inc.
Christopher R.J. Pace
Cooley Godward LLP
4401 Eastgate Mall
San Diego, California 92121

Prudential Insurance Company of America
Mark S. Raffman
SHEA & GARDNER
1800 Massachusetts Ave, NW
Washington, DC 20036

Anthem, Inc.
E. Desmond Hogan
Hogan & Hartson, LLP
555 - 13th Street, NW
Washington, DC 20004

_____
James B. Tilghman, Jr.