UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CHARLES B. SHANE, M.D.; JEFFREY BOOK, D.O;
LANCE R. GOODMAN, M.D.; H. ROBERT HARRISON, M.D.;
GLENN L. KELLY, M.D.; MARTIN MORAN, M.D.;
MANUEL PORTH, M.D.; THOMAS BACKER, M.D.;
SUSAN HANSEN, M.D.; ANDRES TALEISNIK, M.D.;
JULIO TALEISNIK, M.D.; ROGER WILSON, M.D.;
CALIFORNIA MEDICAL ASSOCIATION; MEDICAL
ASSOCIATION OF GEORGIA; FLORIDA MEDICAL
ASSOCIATION and LOUISIANA STATE MEDICAL SOCIETY,

**Case No.**
**04-21589-CIV-MORENO**

      **Plaintiffs,**

v.

COVENTRY HEALTH CARE, INC.;
PACIFICARE HEALTH SYSTEMS, INC.;
UNITEDHEALTH GROUP INCORPORATED and
UNITED HEALTHCARE, INC.,

      **Defendants.**

---

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs Charles B. Shane, M.D., Jeffrey Book, D.O., Lance R. Goodman, M.D., H.

Robert Harrison, M.D., Glenn L. Kelly, M.D., Martin Moran, M.D., Manuel Porth, M.D.,

Thomas Backer, M.D., Susan Hansen, M.D., Andres Taleisnik, M.D., Julio Taleisnik, M.D.,

Roger Wilson, M.D., California Medical Association, Medical Association of Georgia, Florida

Medical Association and Louisiana State Medical Society sue Defendants Coventry Health Care,

Inc., PacifiCare Health Systems, Inc., UnitedHealth Group Incorporated and UnitedHealthCare

Inc., and allege as follows:

## NATURE OF THE CASE

1.      The Individual Plaintiffs (hereinafter referred to as Plaintiffs) bring this action on behalf of themselves and a class of similarly situated physicians seeking redress for the illegal acts of the Defendants, and of other managed care companies with whom they have conspired, which have resulted in a loss of their property and a detriment to their businesses, and for declaratory and injunctive relief to end those practices and prevent further losses.

2.      The Associational Plaintiffs also seek injunctive relief on behalf of their members who will continue to suffer as a result of Defendants' illegal conduct unless it is stopped.

3.      Additionally, although this action is based upon the relationships which exist between doctors and insurers rather than the relationship between the insured and insurer, Plaintiffs are also motivated by their belief that Defendants' scheme is detrimental to the health of their patients and to the welfare of the general public.  By taking funds that have been rightfully earned by physicians and diverting them to their own use, Defendants and other managed care companies with whom they have conspired deprive physicians of the adequate and timely payments they need to maintain their practices.

4.      As set forth below, the fundamental premise of the relationship between Defendants and the doctors who treat their insureds, either pursuant to or without a contract, is that the doctors will be paid, in a timely manner, for the covered, medically necessary services they render.

5.      However, Defendants, on their own and as part of a common scheme, systemically deny and diminish the payments due to doctors so that they are not paid in a timely manner for the covered, medically necessary services they render.

6.      This is done by covertly denying payments to physicians based on financially expedient cost and actuarial criteria rather than medical necessity, and by processing physicians'

bills using automated programs which manipulate standard coding practices to artificially reduce the amount they are paid.

7.       Defendants and the other managed care companies with whom they have conspired collectively insure such a large pool of patients that they are able to perpetuate this scheme through their combined economic power and market dominance.

## JURISDICTION AND VENUE

8.       This Court has jurisdiction over the subject matter of this action pursuant to 18 U.S.C. § 1964 and 28 U.S.C. § 1331. The Court has personal jurisdiction over the Defendants pursuant to 18 U.S.C. §§ 1965(b) and (d).

9.       Venue is proper in this district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391(b).

## PARTIES

### THE INDIVIDUAL PLAINTIFFS

10.       Plaintiff Thomas Backer, M.D., a cardiologist, is a resident of Georgia and a citizen of the United States. During material times Dr. Backer has provided and billed for medical services to insureds of Humana, CIGNA, United and WellPoint pursuant to contract, and to insureds of CIGNA and WellPoint outside of any contractual relationship.

11.       Plaintiff Jeffrey Book, D.O., a family practitioner, is a resident of Florida and a citizen of the United States. During material times Dr. Book has provided and billed for medical services to insureds of CIGNA and Humana pursuant to contract, and has treated the insureds of United and HealthNet outside of any contractual relationship.

12.       Plaintiff Lance R. Goodman, M.D., a pediatrician, is a resident of Georgia and a citizen of the United States. During material times Dr. Goodman has provided and billed for

medical services to insureds of Coventry, United, CIGNA, Humana and WellPoint pursuant to contract.

13.     Plaintiff Susan Hansen, M.D., a neurologist, is a resident of California and a citizen of the United States.   During material times Dr. Hansen, through her professional association, has provided and billed for medical services to insureds of CIGNA, United, Humana, WellPoint, PacifiCare and HealthNet outside of any contractual relationship.

14.     Plaintiff H. Robert Harrison, M.D., a pediatrician and infectious disease specialist, is a resident of Georgia and a citizen of the United States.   During material times Dr. Harrison has provided and billed for medical services to insureds of Coventry, United, CIGNA, Humana and WellPoint pursuant to contract.

15.     Plaintiff Glenn L. Kelly, M.D., a vascular surgeon, is a resident of Colorado and a citizen of the United States.   During material times Dr. Kelly has provided and billed for medical services to insureds of CIGNA and United pursuant to contract.

16.     Plaintiff Martin Moran, M.D., a pediatrician, is a resident of Georgia and a citizen of the United States.   During material times Dr. Moran has provided and billed for medical services to insureds of Coventry, United, CIGNA, Humana and WellPoint pursuant to contract.

17.     Plaintiff Manual Porth, M.D., an orthopedic surgeon, is a resident of Florida and a citizen of the United States.   During material times Dr. Porth has provided and billed for medical services to insureds of CIGNA and United pursuant to contract.

18.     Plaintiff Charles B. Shane, M.D., a gynecologist, is a resident of Kentucky and a citizen of the United States.   During material times Dr. Shane has provided and billed for medical services to insureds of Humana and Anthem pursuant to contract.

19.     Plaintiff Andres Taleisnik, M.D., an orthopedic surgeon, is a resident of California and a citizen of the United States.   During material times Dr. Taleisnik has provided

and billed for medical services to insureds of CIGNA, United, WellPoint, HealthNet and PacifiCare pursuant to contract, and has provided medical services to insureds of CIGNA, Humana, PacifiCare, United, WellPoint and Foundation outside of any contractual relationship.

20. Plaintiff Julio Taleisnik, M.D., an orthopedic surgeon, is a resident of California and a citizen of the United States. During material times Dr. Taleisnik has provided and billed for medical services to insureds of United, WellPoint, HealthNet and PacifiCare pursuant to contract, and to insureds of CIGNA, Humana, PacifiCare, United, HealthNet and WellPoint outside of any contractual relationship.

21. Plaintiff Roger Wilson, M.D., an orthopedic surgeon, is a resident of California and a citizen of the United States. During material times Dr. Wilson has provided and billed for medical services to insureds of United, CIGNA, PacifiCare and WellPoint pursuant to contract, and to insureds of CIGNA, Humana, PacifiCare, United, HealthNet and WellPoint outside of any contractual relationship.

## THE ASSOCIATIONAL PLAINTIFFS

22. The medical associations set forth below (the "Associational Plaintiffs") are participating in this lawsuit on their own behalf and on behalf of their members. They seek the Court's declaratory and injunctive relief as set forth below.

### California Medical Association

23. The California Medical Association ("CMA") is a non-profit, incorporated professional association of California physicians, with its principal place of business in San Francisco, California. CMA is comprised of more than 30,000 physicians, including California physicians in the private practice of medicine in all specialties.

24. CMA's primary purposes, as set forth in its bylaws, are to promote the art and science of medicine, the care and well being of patients, the protection of the public health and

the betterment of the medical profession. CMA is duly authorized to bring this action against PacifiCare to obtain declaratory and injunctive relief on its own behalf and on behalf of its members. Many of CMA's members do not have the time or resources to pursue this litigation and fear retribution if they become named Plaintiffs. In addition, Defendant PacifiCare and the Defendants and managed care companies with whom it has conspired have caused CMA to expend its own resources fighting their tactics.

## Medical Association of Georgia

25.     The Medical Association of Georgia ("MAG") is a non-profit, voluntary professional association of Georgia physicians. MAG was founded in 1849, is an affiliate of the American Medical Association, and is the largest physician association in Georgia. Presently, MAG has over 8,000 members -- more than 5,000 of whom are physicians actively practicing medicine in the State of Georgia.

26.     MAG was founded to promote the art and science of medicine and the improvement of public health. With these ends in mind, MAG actively works to advocate physician and patient positions in the United States Congress, the Georgia General Assembly, before state and federal courts, and in the private sector with large health plans, hospitals and other entities that significantly affect patient care.

27.     MAG is duly authorized to bring this action on its own behalf and on behalf of its members against Defendants Coventry and United. Many of MAG's members do not have the time and resources to pursue this litigation and fear retribution if they become named Plaintiffs. In addition, by creating financial hardships on doctors, Defendants Coventry and United and the other managed care companies with whom they have conspired have caused MAG to lose membership and to expend its own time and resources fighting their tactics.

6

## Florida Medical Association

28.     The Florida Medical Association ("FMA") is a not for profit corporation, which is organized and maintained for the benefit of the approximately 16,000 licensed Florida physicians who comprise its membership.

29.     The FMA was created and exists for the purposes of securing and maintaining the highest standards of practice in medicine and furthering the interests of its members. One of the primary purposes of the FMA is to act on behalf of its members by representing their common interests before various governmental entities and before state and federal courts. The FMA is duly authorized to bring this action on its own behalf and on behalf of its members. Many of FMA's members do not have the time or resources to pursue this litigation and fear retribution if they become named Plaintiffs. In addition, Defendants and the managed care companies with whom they have conspired have caused FMA to expend its own resources fighting their tactics.

## Louisiana State Medical Society

30.     The Louisiana State Medical Society ("LSMS") is a non-profit, incorporated professional association of physicians, with its principal place of business in Baton Rouge, Louisiana. The LSMS was founded in 1878 and represents physicians of all medical specialties.

31.     The LSMS represents over 6,800 physicians and medical students. It is the mission of the LSMS to provide leadership for the advancement of the health of the people of Louisiana and to serve as the premier advocate for patients and physicians.

32.     The LSMS is duly authorized to bring this action on its own behalf and on behalf of its members to obtain declaratory and injunctive relief against Defendant Coventry. Many of LSMS's members do not have the time or resources to pursue this litigation and fear retribution if they become named Plaintiffs. In addition, Defendant Coventry and the other managed care companies with whom it conspired have caused LSMS to expend its own resources fighting their

Kozyak Tropin & Throckmorton, P.A.
200 South Biscayne Boulevard, Suite 2800 , Miami, Florida 33131 • Tel. 305-372-1800

tactics.

## DEFENDANTS

33.     Defendants and the managed care companies with whom they have conspired pay doctors in two basic ways – pursuant to capitation agreements and on a fee for service basis. Regardless of the method of payment, all of the substantive practices, policies, and procedures of the Defendants' health plans are established, implemented, monitored and ratified by the Defendants themselves.  Local subsidiaries or affiliates of the named Defendants do not function as independent corporate entities but rather have an alter-ego relationship with the named Defendants and function as agents under the Defendants' direction and control.

34.     Whenever this Complaint alleges that any Defendant did any act or thing, it is meant that it, its directors, officers, agents, or employees, or the directors, officers, agents or employees of its subsidiaries or affiliates, performed or participated in such act or thing, and in each instance that such act or thing was authorized or ratified by, and done on behalf of, that Defendant.

## Coventry

35.     Defendant Coventry Health Care, Inc. is a corporation based in Bethesda, Maryland, with corporate headquarters at 6075 Rockledge Drive, Suite 900, Bethesda, Maryland, 20817.  It is the parent corporation of a number of subsidiaries that provide health care services through health care plans on a nationwide basis to over 1.5 million members in 15 markets. Coventry Health Care, Inc., its subsidiaries and health care plans are collectively referred to as "Coventry" in this Complaint.

36.     At all relevant times, all Coventry entities and health care plans were the agents of the other Coventry entities and health care plans, and in committing the acts alleged herein, they acted within the scope of their agency, with the consent, permission, authorization and

knowledge of the others, and in furtherance of both their interests and those of the other Defendants and managed care companies they aided and abetted, and with whom they conspired, as more fully described below.  In addition, the actions alleged herein were ratified and approved by the other Coventry entities even though they may have been contrary to corporate policy.

## PacifiCare

37.     Defendant PacifiCare Health Systems, Inc. is a Delaware corporation with its headquarters located at 5995 Plaza Drive, Cypress, California.  It is the parent corporation of a number of subsidiaries that provide health care services through health care plans on a nationwide basis.  PacifiCare Health Systems, Inc., its subsidiaries and health care plans are collectively referred to as "PacifiCare" in this Complaint.

38.     At all relevant times all PacifiCare entities and health care plans were agents of the other PacifiCare entities and plans, and in committing the acts alleged herein, they acted within the scope of their agency, with the consent, permission, authorization and knowledge of their others, and in furtherance of both their interests and the interests of the other Defendants and managed care companies they aided and abetted, and with whom they conspired, as set forth below.  In addition, the actions alleged herein were ratified and approved by each Humana entity even though they may have been contrary to corporate policy.

## United

39.     Defendant UnitedHealth Group Incorporated is a Minnesota corporation with headquarters at UnitedHealth Group Center, 9900 Bren Road East in Minnetonka, Minnesota.

40.     Defendant UnitedHealthCare, Inc. is a subsidiary of UnitedHealth Group Incorporated that operates organized health systems.

41.     Defendants UnitedHealth Group and UnitedHealthCare, directly or through subsidiaries, provide health care services nationwide through health care plans.  UnitedHealth

9

Group, UnitedHealthCare, their subsidiaries and health care plans are referred to as "United" in this Complaint.

42.     At all relevant times all United entities and health care plans were the agents of the other United entities and plans, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of their interests and those of the other Defendants and managed care companies they aided and abetted, or with whom they conspired, as set forth below.  In addition, the actions of each United entity alleged herein were ratified and approved by the other United entities even though they may have been contrary to corporate policy.

## CO-CONSPIRATORS

43.     Defendants have not undertaken the practices described below alone, but instead have done so as part of a common scheme and conspiracy, which includes not only the Defendants but other managed care companies, including those identified below and hereinafter referred to as "Co-Conspirators":

### Anthem

44.     Anthem, Inc. is an Indiana corporation with its corporate headquarters at 120 Monument Circle, Indianapolis, Indiana.  Through its subsidiary Anthem Insurance Companies, Inc., also an Indiana corporation, Anthem, Inc. provides health services to the public on a nationwide basis through numerous health care plans, most notably the Blue Cross and Blue Shields of Colorado, Indiana, Kentucky, Ohio, Nevada, Maine, New Hampshire and Connecticut.  Anthem, Inc., its subsidiaries and health care plans are collectively referred to as "Anthem" in this Complaint.

45.     At all relevant times all Anthem entities and health care plans were the agents of the other Anthem entities and health care plans, and in committing the acts alleged herein acted

within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interests and the interests of the other Co-Conspirators and Defendants, as set forth below. In addition, the actions alleged herein were ratified and approved by the other Anthem entities even though they may have been contrary to corporate policy.

### Health Net

46.     Health Net, Inc. is a Delaware corporation with corporate headquarters at 21650 Oxnard Street, Woodland Hills, California, 91367. In 1998, Foundation Health Systems, Inc. ("Foundation") merged with Health Net, and any reference in this Complaint to Health Net includes Foundation and any reference to Foundation includes Health Net. Health Net is the parent corporation of a number of subsidiaries that provide health care services through health care plans on a nationwide basis. Health Net, its subsidiaries and health care plans are collectively referred to as "Health Net" in this complaint.

47.     At all relevant times all Health Net entities and health care plans were the agents of the other Health Net entities and plans, and in committing the acts alleged herein, they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of both their interests and the interests of the Co-Conspirators and other Defendants, as more fully set forth below. In addition, the actions alleged herein were ratified and approved by the other Health Net entities even though they may have been contrary to corporate policy.

### Humana

48.     Humana, Inc. ("Humana") is a Delaware corporation with corporate headquarters at 500 West Main Street, Louisville, Kentucky 40202.

11

49.    Humana Health Plan, Inc. ("HHP") is also a Delaware corporation with corporate headquarters at 500 West Main Street, Louisville, Kentucky 40202.

50.    Humana, Inc. and/or HHP, directly or through subsidiaries, provide health care services on a nationwide basis by offering and operating health care plans.  Humana, Inc., HHP, their subsidiaries, other entities controlled by them and the Humana health care plans are referred to as "Humana" in this Complaint.

51.    At all relevant times all Humana entities and health care plans were the agents of the other Humana entities and health plans, and in committing the acts alleged herein they acted within the scope of their agency, and in furtherance of both their interests and the interests of the other Co-Conspirators and Defendants, as set forth below.  In addition, the actions alleged herein were ratified and approved by each Humana entity even though they may have been contrary to corporate policy.

### WellPoint

52.    WellPoint Health Networks, Inc. is a California corporation with corporate headquarters at One WellPoint Way, Thousand Oaks, California 91362.  It provides, directly and through a number of subsidiaries, including Blue Cross of California, Blue Cross and Blue Shield of Georgia, Blue Cross and Blue Shield of Missouri and Unicare, health care services on a nationwide basis through health care plans.  WellPoint Health Networks, Inc., its subsidiaries and health care plans are collectively referred to as "WellPoint" in this Complaint.

53.    At all relevant times all WellPoint entities and health care plans were the agents of the other WellPoint entities and plans, and in committing the acts alleged herein they acted within the scope of their agency, with the consent, permission, authorization and knowledge of the others, and in furtherance of their interests and the interests of the other Co-Conspirators and Defendants, as set forth below.  In addition, the actions of each WellPoint entity alleged herein

Kozyak Tropin & Throckmorton, P.A.
200 South Biscayne Boulevard, Suite 2800 , Miami, Florida 33131 • Tel. 305-372-1800

were ratified and approved by the other WellPoint entities even though they may have been contrary to corporate policy.

## FACTUAL ALLEGATIONS COMMON TO ALL OR MULTIPLE COUNTS AGAINST ALL DEFENDANTS

### FEE FOR SERVICE CONTRACTS AND NONCONTRACT DOCTORS

54.     Plaintiffs and class members provide medical services to Defendants' and Co-Conspirators' insureds on a fee for service basis both pursuant to and without contracts.   These services are provided based upon the fundamental premise that, if the services are covered and are medically necessary, the Plaintiffs and class members will be compensated in a timely manner for rendering those services.

55.     Each fee for service contract Defendants and Co-Conspirators enter into, as well as the accompanying material they provide, represents that doctors will be paid in a timely manner for rendering covered, medically necessary services to their insureds in accordance with standard medical coding procedures.

56.     Defendants and Co-Conspirators also represent to the medical profession at large that they will pay doctors in a timely manner for rendering covered, medically necessary services to their insureds.  These representations are made in numerous ways, including:

      a)      By providing in their insureds' plans or policies that doctors both within and without defined networks will be compensated for rendering covered, medically necessary services;

      b)      By providing insurance cards to their insureds to show treating doctors;

      c)      By disseminating billing information to the profession at large;

      d)      By confirming coverage for medically necessary services when contacted by doctors prior to treatment;

      e)      By insisting that payment requests describe the covered, medically necessary services rendered in a standard coded fashion;

f)   By explaining payments so as to make it appear that doctors are being paid for the covered, medically necessary services they render.

57.   In addition, although it goes to the heart of the relationship, and is necessary to prevent doctors from being misled by their apparent actions and statements, Defendants and Co-Conspirators fail to disclose that the automated processing schemes described in paragraphs 63-71 will be used to deny and diminish payment for covered, medically necessary services. At best, Defendants and Co-Conspirators state only that automated programs will be used to "correct" improper coding and payment requests – yet another misrepresentation.

58.   Following the provision of medical services on a fee for service basis, whether pursuant to contract or otherwise, Plaintiffs and class members are required to submit a standard coded claim form.

59.   By far the most commonly used form is the HCFA-1500, which was developed by the Health Care Financing Administration in conjunction with the American Medical Association ("AMA") for use in the Medicare and Medicaid programs. The Health Care Financing Administration is now known as the Center for Medicare and Medicaid Services ("CMS"), and the HCFA-1500 form is now known as the CMS-1500. The HCFA/CMS-1500 form incorporates the AMA's Current Procedural Terminology, or CPT coding procedure, and includes a code identifying the diagnosis and procedure performed as well as modifiers for the degree of difficulty, complexity and multiplicity.

60.   The purpose of the coded information contained on the HCFA/CMS-1500 and other standard claim forms is to provide a uniform language that accurately describes the medical, surgical and diagnostic services a doctor has rendered, and to give Defendants and Co-Conspirators or their designated payors the information they need to process a claim for payment.

Kozyak Tropin & Throckmorton, P.A.
200 South Biscayne Boulevard, Suite 2800 , Miami, Florida 33131 • Tel. 305-372-1800

61.    Each Plaintiff and class member relies upon Defendants' and Co-Conspirators' representations, both express and implied, that they will be paid for rendering covered, medically necessary services by, *inter alia,* providing those services, by not billing the insured, and by requesting payment for those services from the Defendants and Co-Conspirators or a designated payor in the manner they require, i.e. using the HCFA/CMS-1500 or other prescribed standard claims form and standardized coding.

62.    However, the uniform coding process embodied in these forms allows automated logic to be applied to physician payment requests, and rather than paying Plaintiffs and class members for covered, medical necessary services in accordance with standard coding practices, Defendants and Co-Conspirators engage in a common fraudulent scheme designed to systematically deny and diminish payments to Plaintiffs and class members using the devices and techniques set forth below.  Each of the Plaintiffs and class members have been victimized by these schemes.

### Denial of Payment Requests Based Upon Cost Criteria Rather Than Coverage and Medical Necessity

63.    Defendants and Co-Conspirators secretly do not use "medical necessity" or coverage as the criteria for making payment decisions.  Instead, they use cost-based or other actuarial criteria unrelated to medical necessity to approve or deny claims submitted by Plaintiffs and the class.  For example, Humana routinely and automatically denies payment for certain CPT codes without any inquiry into or analysis of medical necessity.  These undisclosed cost-based criteria include Defendants' and Co-Conspirators' own guidelines and criteria as well as guidelines developed in concert with other entities, including but not limited to Milliman & Robertson and InterQual.

64.    Defendants and Co-Conspirators systematically deny valid claims submitted for payment by Plaintiffs and class members on this basis.

## **Downcoding and Bundling**

65.      Defendants and Co-Conspirators have also implemented systematic claims processes to manipulate the CPT codes contained in the claims forms submitted by Plaintiffs and class members by "downcoding" or "bundling" claims.  To accomplish this they use software sold and licensed by McKesson HBOC, or comparable software capable of modifying CPT code protocols set by the American Medical Association.

66.      "Downcoding" denies or diminishes the payment of claims submitted by physicians by arbitrarily, and without prior notice, changing the code assigned to a particular service to a less expensive one.

67.      "Bundling" denies or diminishes the payment of claims submitted by physicians by arbitrarily, and without prior notice, combining the codes of two or more procedures into one.

68.      These processes are not used, as Defendants and Co-Conspirators would have it, to correct improper coding, but to cheat doctors out of payment for services rendered.

## **Refusal To Recognize Modifiers**

69.      Defendants' and Co-Conspirators' automated processing systems also manipulate the data contained on HCFA/CMS-1500 or other standard claims forms by refusing to recognize "modifiers" – codes which indicate the degree of multiplicity, complexity or difficulty of the evaluation or procedure at issue.

70.      Rather than compensate Plaintiffs and class members for the services reflected by these enhancement codes, or question them on the basis of medical necessity, they are simply ignored.

71.      Nothing in standard coding guidelines requires the submission of additional documentation when modifiers are used, or permits them to be ignored.

### Explanation of Benefits/Fraudulent Concealment

72.     Once Plaintiffs' and class members' payment requests have been improperly denied or diminished, Defendants and Co-Conspirators provide Plaintiffs and class members with an explanation of benefits ("EOB").

73.     Through coded explanations, the EOBs misrepresent or conceal the actual manner in which Plaintiffs' and the class members' payment requests were processed so as to induce them to accept reduced payments in reliance thereon.

74.     Defendants and Co-Conspirators also conceal the manner in which they actually process requests for payment by refusing to disclose it, by taking affirmative steps to keep it secret, and by depriving Plaintiffs and class members of information that might enable them to discover their processing techniques, including such basic information as the schedule of fees in effect for various procedures.

### COERCIVE USE OF ECONOMIC POWER

75.     Defendants and Co-Conspirators collectively control a majority of the subscribers and providers in the managed care market.

76.     In order to perpetuate the above scheme and continue to confiscate Plaintiff's and the class members' property, Defendants and Co-Conspirators use their overwhelming economic power and market dominance to coerce Plaintiffs and the class, at the risk of being denied patient referrals and/or "black-listed" altogether, into providing care under Defendants' policies and practices on a "take it or leave it" basis.

77.     Defendants and Co-Conspirators further wield their economic power and market dominance in a coercive manner by reserving the right to unilaterally amend contracts with physicians, refusing to provide information concerning pricing or fee structures to Plaintiffs or

Kozyak Tropin & Throckmorton, P.A.
200 South Biscayne Boulevard, Suite 2800 , Miami, Florida 33131 • Tel. 305-372-1800

class members, and failing to provide any feasible mechanism for review of the automated payment reductions – all in furtherance of the scheme described above.

78.    Defendants' coercive conduct is made more effective by, and enforced through, the conspiracy and RICO enterprise described below as well as Defendants' and Co-Conspirators' efforts to aid and abet each other in confiscating Plaintiffs' and class members' property.

## CONSPIRACY

79.    Each Defendant and Co-Conspirator, with knowledge and intent, agreed to the overall objective of the conspiracy, agreed to commit acts of fraud to relieve Plaintiffs of their rightful compensation, and actually committed such acts.

80.    Indeed, for the fraudulent schemes described above to be successful, each Defendant and Co-Conspirator had to agree to enact and utilize the same devices and fraudulent tactics against the Plaintiffs and members of the class.  If only one of them engaged in these activities, physicians could and would refuse to do business with them, but together Defendants and Co-Conspirators have the power and influence necessary to affect and perpetuate their scheme.

81.    Numerous common facts and similar activities, which reflect the above reality and imply the existence of a conspiracy, exist among all of the Defendants, Co-Conspirators and other members of the conspiracy, including:

        (a)    the payment provisions in fee for service contracts;

        (b)    the claims procedures, including the data physicians are required to provide in submitting claims, the forms they must submit the data on, and the coding they must use to submit the data;

        (c)    medical necessity criteria, and their use of guidelines developed in concert with third parties;

Kozyak Tropin & Throckmorton, P.A.
200 South Biscayne Boulevard, Suite 2800 , Miami, Florida 33131 • Tel. 305-372-1800

(d)     the automated processes used in manipulating CPT codes, including downcoding and bundling;

(e)     the deliberate purchasing of software systems that do not recognize modifiers;

(f)     refusing to give doctors fee schedules.

82.     The conspiracy has been conducted through and implemented by:

(a)     the development and adoption of specific clinical practice guidelines and related healthcare review criteria such as those established by Milliman & Robertson and InterQual;

(b)     the development and utilization of automated and integrated claims processing and other systems such as those generated by McKesson HBOC, Ingenix and FACTS Services, Inc., and the configuration and use of such systems to similarly deny, diminish and delay payments to physicians;

(c)     the joint development of accreditation standards and industry information by the National Committee for Quality Assurance;

(d)     the utilization, participation in development and purchase of reimbursement guidelines such as those offered by the Health Insurance Association of America;

(e)     participation and coordination in trade associations, such as the Health Insurance Association of America and the American Association of Health Plans, that develop common industry standards and/or act as vehicles for the exchange of sensitive business information;

(f)     participation and coordination in industry groups such as the Coalition for Quality Healthcare and Integrated Health Care Organization that disseminate unified information and messages; and

(g)     participation in and coordination through private, jointly owned corporations such as MedUnite which facilitate Defendants' and Co-Conspirators' claims processing procedures.

## THE NEED FOR DECLARATORY AND INJUNCTIVE RELIEF

83.     Defendants' and Co-Conspirators' automated scheme to deny and reduce payments to doctors who treat their insureds on a fee for service basis is an ongoing problem that

Kozyak Tropin & Throckmorton, P.A.
200 South Biscayne Boulevard, Suite 2800 , Miami, Florida 33131 • Tel. 305-372-1800

will continue to cause Plaintiffs and members of the class economic losses and threaten their ability to practice medicine and serve the public health.

84.    A money judgment in this case will only compensate Plaintiffs and members of the class for past losses. It will not stop Defendants' interference in medical treatment decisions, and it will not stop the Defendants from continuing to confiscate the money doctors earn, which is necessary to maintain their practice on an ongoing basis.

85.    No individual doctor has a practical or adequate remedy, either administratively or at law, to recover these future losses. The costs of pursuing such claims far exceeds the amount at issue.

86.    Even a class action such as the one contemplated in this case is a monumental undertaking that cannot be mounted on a regular basis.

87.    Where multiple lawsuits are required to redress repeated statutory violations, breaches of contract or other wrongs, there is no adequate remedy at law and irreparable harm exists.

## RICO ALLEGATIONS

### The Managed Care Enterprise

88.    Plaintiffs, the class members and Defendants are "persons" within the meaning of 18 U.S.C. § 1961(3).

89.    Based upon Plaintiffs' current knowledge, the following persons constitute a union or group of individuals associated in fact that Plaintiffs refer to as the "Managed Care Enterprise" ("MCE"): (1) Defendants; (2) Co-Conspirators; (3) other health insurance companies not named as defendants or identified as co-conspirators herein, including Aetna; (4) Milliman & Robertson and InterQual, third party entities which promulgate purported patient care guidelines; (5) HBOC McKesson, Ingenix, Facts Services and other third party entities which develop

claims processing systems or components; (6) American Association of Health Plans and the Health Insurance Association of America, Defendants' trade associations; (7) MedUnite, an entity created by Defendants, Co-Conspirators and their trade association to facilitate claims processing; and (8) the Coalition for Affordable Quality Healthcare.

90.     The MCE is an ongoing organization which engages in, and whose activities affect, interstate commerce.

91.     While the Defendants and Co-Conspirators participate in and are members and part of the MCE, and are a part of it, they also have an existence separate and distinct from the enterprise.

92.     In order to successfully retain monies owed physicians in the manner set forth above, Defendants and Co-Conspirators need a system that allows them to manipulate and control reimbursements to physicians and conceal the manner in which that is done.  The MCE provides them with that system and ability, and their control of and participation in it is necessary for the successful operation of their scheme.   The Defendants and Co-Conspirators control and operate the MCE as follows:

    (a)    By developing themselves, and engaging and paying Milliman & Robertson and InterQual to develop, generalized standards and "patient care guidelines" to use as actual criteria to systematically deny claims without regard to medical necessity or coverage;

    (b)    By agreeing to use and using those guidelines to deny claims;

    (c)    By engaging and paying HBOC McKesson, Ingenix and Facts Services to develop automatic systems for editing and manipulating the claims information contained in the HCFA/CMS 1500 form;

    (d)    By agreeing to and using those systems to process claims and deny or diminish payment;

    (e)    By utilizing and supporting trade associations – the American Association of Health Plans ("AAHP") and Health Insurance Association of America ("HIAA") – as vehicles for communication and the exchange and

Kozyak Tropin & Throckmorton, P.A.
200 South Biscayne Boulevard, Suite 2800 , Miami, Florida 33131 • Tel. 305-372-1800

dissemination of information necessary to the scheme, or, in the words of AAHP, to "unify the industry voice" and deliver a "unified message";

(f)     By participating in the use of, and more recently creating MedUnite as, a common entry point for physician claim data to assist the Defendants and Co-Conspirators in processing doctors' claims in a coordinated fashion;

(g)     By utilizing the Coalition for Quality Healthcare to exchange and disseminate information, take joint action and conceal their wrongdoing. According to the coalition's own Web site, the CEO's of the nation's largest health plans approve all joint actions of the Coalition;

(h)     By exchanging upper level employees to facilitate unified and concerted action.

93.     As set forth above, the MCE has an ascertainable structure separate and apart from the pattern of racketeering activity in which Defendants and Co-Conspirators engage.

## Predicate Acts

94.     Section 1961(1) of RICO provides that "racketeering activity" includes any act indictable under 18 U.S.C. § 1341 (relating to mail fraud) and 18 U.S.C. § 1343 (relating to wire fraud). As set forth below, Defendants have and continue to engage in conduct violating each of these laws to effectuate their scheme.

95.     In addition, in order to make their scheme effective, each of the Defendants sought to and did aid and abet the others' in violating the above laws within the meaning of 18 U.S.C. §2. As a result, their conduct is indictable under 18 U.S.C. §§ 1341 and 1343 on this additional basis.

## Violations of 18 U.S.C. §§ 1341 and 1343

96.     For the purpose of executing and/or attempting to execute the above described scheme to defraud or obtain money by means of false pretenses, representations or promises, Defendants and Co-Conspirators, in violation of 18 U.S.C. § 1341, placed in post offices and/or in authorized repositories matter and things to be sent or delivered by the Postal Service, caused matter and things to be delivered by commercial interstate carrier, and received matter and things

from the Postal Service or commercial interstate carriers, including but not limited to agreements, manuals, correspondence, patient lists, payments, EOBs, reports, data, summaries, statements, and plan materials.

97.    For the purpose of executing and/or attempting to execute the above described scheme to defraud or obtain money by means of false pretenses, representations or promises, Defendants and Co-Conspirators, also in violation of 18 U.S.C. § 1343, transmitted and received by wire, matter and things which include but are not limited to agreements, manuals, correspondence, patient lists, payments, EOBs, reports, data, summaries, oral and written statements, faxes, and plan materials.

98.    The matter and things sent by Defendants and Co-Conspirators via the Postal Service, commercial carrier, wire or other interstate electronic media include, inter alia:

    a)    material containing false and fraudulent misrepresentations that they would pay Plaintiffs and class members for the covered, medically necessary services they provided to their insured;

    b)    material which concealed or failed to disclose that Defendants and Co-Conspirators would and did use the techniques and procedures described in paragraphs 63-71 above to deprive Plaintiffs and class members of payment, including the use of cost based criteria rather than medical necessity and coverage to make payment decisions, downcoding, bundling and refusing to recognize modifiers;

    c)    material constituting explanations for payments made or denied by Defendants, but which, in fact, fail to reveal and/or actively conceal the reasons that payment has been denied, diminished, delayed, or otherwise adjusted from the request for payment as submitted by the physician.

99.    Other matter and things sent through or received from the Postal Service, commercial carrier or interstate wire transmission by Defendants and Co-Conspirators included information or communications in furtherance of or necessary to effectuate the scheme.

Kozyak Tropin & Throckmorton, P.A.
200 South Biscayne Boulevard, Suite 2800 , Miami, Florida 33131 • Tel. 305-372-1800

100.    Defendants' and Co-Conspirators' misrepresentations, acts of concealment and failures to disclose were knowing and intentional, and made for the purpose of deceiving Plaintiffs and the class and obtaining their property for Defendants' and Co-Conspirators' gain.

101.    Defendants and Co-Conspirators either knew or recklessly disregarded the fact that the misrepresentations and omissions described above were material, and Plaintiffs and the class relied on the misrepresentations and omissions as set forth above.

102.    As a result, Defendants and Co-Conspirators have obtained money and property belonging to the Plaintiffs and class members, and Plaintiffs and the class have been injured in their business or property by Defendants' and Co-Conspirators' overt acts of mail and wire fraud, and by their aiding and abetting each other's acts of mail and wire fraud.

### Pattern Of Racketeering Activity

103.    Defendants and Co-Conspirators have engaged in a "pattern of racketeering activity," as defined by 18 U.S.C. § 1961(5), by committing or aiding and abetting in the commission of at least two acts of racketeering activity, i.e. indictable violations of 18 U.S.C. §§ 1341 and 1343 as described above, within the past ten years.  In fact, each of the Defendants and Co-Conspirators has committed or aided and abetted in the commission of thousands of acts of racketeering activity.  Each act of racketeering activity was related, had a similar purpose, involved the same or similar participants and method of commission, had similar results and impacted similar victims, including Plaintiffs and class members.

104.    The multiple acts of racketeering activity which Defendants and Co-Conspirators committed and/or conspired to or aided and abetted in the commission of, were related to each other and amount to and pose a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering activity" as defined in 18 U.S.C. § 1961(5).

Kozyak Tropin & Throckmorton, P.A.
200 South Biscayne Boulevard, Suite 2800 , Miami, Florida 33131 • Tel. 305-372-1800

105.     Examples of predicate acts committed by Defendants and Co-Conspirators pursuant to their scheme to defraud Plaintiffs and their conspiracy to violate RICO are set forth in the Civil RICO Case Statement Pursuant to Local Rule 12.1, the Supplement to Civil RICO Case Statement Pursuant to Local Rule 12.1, the Amended Civil RICO Case Statement Pursuant to Local Rule 12.1, and the Supplemental Civil Rico Case Statement for Defendants Anthem, Inc. and Coventry Healthcare Pursuant to Local Rule 12.1, filed in *In re: Managed Care Litig.*, Case No. 00-1334-MD-MORENO.

## RICO VIOLATIONS

### § 1962(c)

106.     Section 1962(c) of RICO provides that it "shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ...."

107.     Through the patterns of racketeering activities outlined above, Defendants and Co-Conspirators have conducted and participated in the affairs of the MCE.

### § 1962(d)

108.     Section 1962(d) of RICO makes it unlawful "for any person to conspire to violate any of the provisions of subsection (a), (b) or (c), of this section."

109.     Defendants' and Co-Conspirators' conspiracy to secure money due the Plaintiffs and class members for their own use through the fraudulent scheme described above violates 18 U.S.C. § 1962(d).

110.     Each of the Defendants and Co-Conspirators agreed to participate, directly or indirectly, in the conduct of the affairs of Managed Care Enterprise through a pattern of racketeering activity comprised of numerous acts of mail fraud, wire fraud and extortion, and

each Defendant so participated in violation of 18 U.S.C. § 1962(c).

## CLASS ALLEGATIONS

### Class Definition

111.    Plaintiffs bring this action on their own behalf and, pursuant to Fed. R. Civ. P. 23(b)(1)(A), (b)(2), and/or (b)(3), and USDC Southern District of Florida Local Rule 23.1, as a class action on behalf of a nationwide class of persons defined as:

**Global Class:**   All medical doctors who provided services to any person insured by CIGNA, HealthNet, WellPoint, Anthem, Humana or any Defendant from August 14, 1996 to September 30, 2002.

### RULE 23(a)

### Typicality

112.    The named Plaintiffs and the members of the class each and all have tangible and legally protectable interests at stake in this action.

113.    The claims of the named class representatives and the absent class have a common origin and share a common basis.   Their claims originate from the same illegal, fraudulent, confiscatory, conspiratorial, and aiding and abetting practices of Defendants and Co-Conspirators, and they act in the same way toward the Plaintiffs and the members of the class. As such, each named Plaintiff has been the victim of one or more of the following illegal practices at the hands of one or more of the Defendants and Co-Conspirators: cost based automated claims denials, bundling, downcoding and refusal to recognize modifiers.

114.    The class representatives state claims for which relief can be granted that are typical of the claims of absent class members.   If brought and prosecuted individually, the claims of each class member would necessarily require proof of the same material and substantive facts, rely upon same remedial theories, and seek the same relief.

Kozyak Tropin & Throckmorton, P.A.
200 South Biscayne Boulevard, Suite 2800 , Miami, Florida 33131 • Tel. 305-372-1800

115.   The claims and remedial theories pursued by the named class representatives are sufficiently aligned with the interests of absent class members to ensure that the universal claims of the class will be prosecuted with diligence and care by the Plaintiffs as representatives of the class.

### Numerosity

116.   The members of the class are so numerous that joinder of all members is impracticable.  Defendants and Co-Conspirators offer managed care services to over 160 million subscribers and accomplish this through the services of over 500,000 physicians.  The class is, however, ascertainable as the names and addresses of all class members can be identified in business records maintained by the Defendants and Co-Conspirators.

### Commonality

117.   The questions of law and fact common to the class include, *inter alia.*

a.   Whether Defendants and Co-Conspirators conspired and/or aided and abetted each other in furtherance of the unlawful acts alleged herein;

b.   Whether Defendants and Co-Conspirators have engaged in mail and wire fraud;

c.   Whether Defendants and Co-Conspirators engaged in a pattern of racketeering activity;

d.   Whether the Managed Care Enterprise is an enterprise within the meaning of 18 U.S.C. § 1961 (4);

e.   Whether Defendants and Co-Conspirators conducted or participated in the affairs of the Managed Care Enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962 (c);

f.   Whether Defendants' and Co-Conspirators' overt and/or predicate acts in furtherance of the conspiracy and/or aiding and abetting in violation of 18 U.S.C. § 1962(c) proximately caused injury to the Plaintiffs' and class members' business or property;

g.   Whether Defendants and Co-Conspirators act and/or refuse to act on grounds generally applicable to the Plaintiffs and class members;

h.   Whether Defendants and Co-Conspirators bundle;

i.   Whether Defendants and Co-Conspirators downcode;

j.      Whether Defendants and Co-Conspirators deny claims on automated cost bases rather than coverage and medical necessity;

k.      Whether Defendants and Co-Conspirators refuse to recognize modifiers;

l.      Whether Defendants and Co-Conspirators represent that they will pay doctors for rendering covered, medically necessary services in accordance with CPT coding procedures;

m.      Whether Defendants and Co-Conspirators fraudulently conceal their scheme.

## Adequate Representation

118.    The named Plaintiffs are willing and prepared to serve the Court and proposed class in a representative capacity with all of the obligations and duties material thereto.   The Plaintiffs will fairly and adequately protect the interest of the class and have no interests adverse to, or which directly and irrevocably conflict with, the interests of other members of the class.

119.    The self-interests of the named class representatives are co-extensive with and not antagonistic to those of the absent class members.   The proposed representatives will undertake to well and truly protect the interests of the absent class members.

120.    The named plaintiffs have engaged the services of counsel indicated below.   Said counsel are experienced in complex class litigation, will adequately prosecute this action, and will assert, protect and otherwise well represent the named class representatives and absent class members.

## RULE 23(b)(1)(A) AND (B)

121.    The prosecution of separate actions by individual members of the class would create a risk of adjudications with respect to individual members of the class which would, as a practical matter, be dispositive of the interests of other members of the class who are not parties to the action, or could substantially impair or impede their ability to protect their interests.

122.    The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the

Kozyak Tropin & Throckmorton, P.A.
200 South Biscayne Boulevard, Suite 2800 , Miami, Florida 33131 • Tel. 305-372-1800

class which would establish incompatible standards of conduct for the parties opposing the class. Such incompatible standards and inconsistent or varying adjudications, on what would necessarily be the same essential facts, proof and legal theories, would also create and allow to exist inconsistent and incompatible rights within the plaintiff class.

### RULE 23(b)(2)

123.    Defendants and Co-Conspirators have acted or refused to act on grounds generally applicable to the class, making final declaratory or injunctive relief appropriate.

### RULE 23(b)(3)(2)

124.    The questions of law and fact common to members of the class predominate over any questions affecting only individual members.

125.    A class action is superior to other available methods for the fair and efficient adjudication of the controversies herein in that:

(a)    Individual claims by the class members are impractical as the costs of pursuit far exceed what any one plaintiff or class member has at stake.

(b)    As a result, although multiple class actions have been filed, there has been very little individual litigation over the controversies herein, and individual members of the class have no interest in prosecuting and controlling separate actions.

(c)    As evidenced by the actions of the Panel on Multi District Litigation in this case, it is desirable to concentrate litigation of the claims herein in this forum.

(d)    The proposed class action is manageable.

### COUNT I

### VIOLATION OF RICO 18 U.S.C. § 1962(d) BY CONSPIRING TO VIOLATE 18 U.S.C. § 1962(c)

### (All Plaintiffs and the Class vs. All Defendants with Whom They Have No Contracts And Defendants with Whom They Have Contracts to the Extent Their Claims Stem From Contractual Relationships with Other Defendants or Co-Conspirators)

126.    Plaintiffs and class members incorporate and reallege paragraphs 1-21, 33-82 and

Kozyak Tropin & Throckmorton, P.A.
200 South Biscayne Boulevard, Suite 2800 , Miami, Florida 33131 • Tel. 305-372-1800

88-125 above as if fully set out herein.

127.    This claim for relief arises under 18 U.S.C. § 1964(c).

128.    In violation of 18 U.S.C. § 1962(d), Defendants and Co-Conspirators have, as set forth above, conspired to violate 18 U.S.C. § 1962(c) by conducting, or participating directly or indirectly in the conduct of, the affairs of the MCE through a pattern of racketeering.

129.    As a direct and proximate result, Plaintiffs and class members have been injured in their business or property by the predicate acts which make up Defendants' and Co-Conspirators' patterns of racketeering.

130.    Specifically, Plaintiffs and class members have been injured in their business or property by the denial of payments for covered, medically necessary services that they have rendered to Defendants' and Co-Conspirators' insureds, by reductions in such payments when made, and by the loss of interest on diminished or withheld payments.

## COUNT II

### VIOLATION OF 18 U.S.C. § 2 BY SEEKING TO AND AIDING AND ABETTING IN THE VIOLATION OF 18 U.S.C. § 1962(c)

**(All Plaintiffs and the Class vs. All Defendants with Whom They Have No Contracts and All Defendants with Whom They Have Contracts to the Extent Their Claims Stem from Contractual Relationships with Other Defendants or Co-Conspirators)**

131.    Plaintiffs incorporate and reallege the allegation paragraphs 1-21, 33-82 and 88-125 above as if fully set out herein.

132.    This claim arises under 18 U.S.C. § 1964(c).

133.    As set forth above, Defendants and Co-Conspirators knowingly, and with shared intent, sought to, and have, aided and abetted each of the other Defendants in the commission of predicate acts, in engaging in a pattern of racketeering activity, and in violating of U.S.C. § 1962(c) as described in paragraphs 106-107 and 128.

134.    As a result, under 18 U.S.C. § 2, the RICO violations of each Defendant and Co-

30

Conspirator are those of the others as if they had been committed directly by them.

135.    As a direct and proximate result of the fact that each Defendant and Co-Conspirator aided and abetted the others in violating 18 U.S.C. § 1962(c), Plaintiffs and class members have been injured in their business or property by the predicate acts which make up Defendants' and Co-Conspirators' patterns of racketeering.

136.    Specifically, Plaintiffs and class members have been injured in their business or property by the denial of payments for covered, medically necessary services that they have rendered to Defendants' and Co-Conspirators' insureds, by reductions in such payments when made and by the loss of interest on both diminished and withheld payments.

**COUNT III**

**DECLARATORY AND INJUNCTIVE RELIEF
UNDER 18 U.S.C. § 1964(a)**

**(All Plaintiffs, the Class and the Associational Plaintiffs vs. All Defendants with
Whom They or Their Members Have No Contracts and All Defendants with Whom They
Have Contracts to the Extent the Claims Stem from Contractual Relationships with
Other Defendants or Co-conspirators)**

137.    The Plaintiffs, the Class and the Associational Plaintiffs reallege and incorporate paragraphs 1-125 above as if set forth fully herein.

138.    This claim arises under 18 U.S.C. § 1964(a), which authorizes the district courts to enjoin violations of 18 U.S.C. § 1962, and under 28 U.S.C. § 2201 which authorizes associated declaratory relief.

139.    As set forth in Counts I and II above, Defendants have violated 18 U.S.C. §§ 1962(c) and (d), and will continue to do so in the future.

140.    Enjoining the Defendants from committing these RICO violations in the future and/or declaring their invalidity is appropriate as the Plaintiffs, the Class, and the Associational

Plaintiffs have no adequate remedy at law, and will, as set forth in paragraphs 83-87 above, suffer irreparable harm in the absence of the Court's declaratory and injunctive relief.

**PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiffs, the Associational Plaintiffs and members of the Class pray for the following relief:

**AS TO COUNTS I AND II:** A judgment in favor of all Plaintiffs and Global Class members against all Defendants, jointly and severally, for treble the amount of damages suffered by reason of payments due them for services rendered on a fee for service or capitation basis having been wrongfully withheld, denied or reduced through Defendants' and Co-Conspirators' predicate acts and violations of Section 1962(c) of RICO, together with treble the amount of interest due on payments delayed or withheld through Defendants' and Co-Conspirators' predicate acts and RICO violations.

**AS TO COUNT III:** Injunctive relief preventing Defendants from employing automated processing techniques that use improper cost-based criteria to reject claims, that improperly downcode and bundle procedures, that ignore modifiers and that otherwise improperly alter or adjust claims as a means of denying or reducing payments due Plaintiffs and members of the Class for rendering covered, medically necessary services to Defendants' and Co-Conspirators' insureds.

Plaintiffs and the Class further pray for an award of attorneys fees where permitted by law and such other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable as a matter of right.

Dated this 15th day of December, 2005.

Kozyak Tropin & Throckmorton, P.A.
200 South Biscayne Boulevard, Suite 2800 , Miami, Florida 33131 • Tel. 305-372-1800

Archie C. Lamb, Jr.
LAW OFFICES OF ARCHIE LAMB
2017 Second Avenue North
Birmingham, AL 35203
Tel: 205-324-4644

Aaron Podhurst
PODHURST ORSECK
25 W. Flagler Street, Suite 800
Miami, FL 33130

James B. Tilghman, Jr. (Fla. Bar No. 207209)
STEWART TILGHMAN FOX & BIANCHI
1 SE 3rd Avenue, Suite 3000, Miami, FL 33131

Nicholas B. Roth
EYSTER KEY TUBB WEAVER & ROTH
402 E. Moulton Street, Decatur, AL 35601

Jeffery A. Mobley
LOWE MOBLEY & LOWE
1210 - 21st Street, Haleyville, AL 35565

Robert Foote
FOOTE & MEYERS
416 South Second Street, Geneve, IL 60134

Joe R. Whatley, Jr.
WHATLEY DRAKE
2323 2nd Avenue North, Birmingham, AL 35203

Mark Gray
GRAY & WEISS
1200 PNC Plaza, 500 West Jefferson
Louisville, KY 40202

J. Mark White
WHITE DUNN & BOOKER
2025 3rd Avenue North, Suite 600
Birmingham, AL 35203

Harley S. Tropin (Fla. Bar No. 241253)
Janet L. Humphreys (Fla. Bar No. 607258)
KOZYAK TROPIN & THROCKMORTON
2525 Ponce de Leon, 9th Floor
Miami, FL 33134
Tel: 305-372-1800

Dennis G. Pantazis
WIGGINS CHILDS QUINN & PANTAZIS
301 - 19th Street North, Birmingham, AL 35203

Kenneth S. Canfield
DOFFERMYRE SHIELDS CANFIELD
KNOWLES & DEVINE
1355 Peachtree Street, Suite 1600
Atlanta, GA 30309

Edith M. Kallas
Joseph P. Gugliemo
MILBERG WEISS BERSHAD & SCHULMAN
One Pennsylvania Plaza, 48TH Floor
New York, NY 10119

Guido Saveri/R. Alexander Saveri
Cadio Zirpoli
SAVERI & SAVERI
111 Pine Street, Suite 1700
San Francisco, CA 94111-5619

James E. Hartley, Jr.
DRUBNER HARTLEY & O'CONNOR
500 Chase Parkway, 4th Floor
Waterbury, CT 06708

Kozyak Tropin & Throckmorton, P.A.
200 South Biscayne Boulevard, Suite 2800 , Miami, Florida 33131 • Tel. 305-372-1800

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on this 15th day of December, 2005, a true copy of the

foregoing was served via electronic mail and hard copy to the following counsel:

Humana, Inc. and Humana Health Plan, Inc.
K. Lee Blalack
O'Melveny & Myers, LLP
1625 Eye Street, NW
Washington, DC 20006-4001

Coventry Health Care, Inc.
Thomas C. Zielinski
2751 Centerville Road, Suite 400
Wilmington, Delaware 19808

Health Net, Inc.
R. Ryan Stoll
Skadden Arps Slate Meagher & Flom, LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606

PacifiCare Health Systems, Inc.
Christopher R.J. Pace
Cooley Godward LLP
4401 Eastgate Mall
San Diego, California 92121

United Health Group and United Health Care
Edward Soto
Weil Gotshal & Manges LLP
1395 Brickell Avenue, Suite 1200
Miami, Florida 33131

WellPoint Health Networks, Inc.
Stan Blumenfeld
O'Melveny & Myers, LLP
400 South Hope Street
Los Angeles, California 90071

Anthem, Inc.
E. Desmond Hogan
Hogan & Hartson, LLP
555 - 13th Street, NW
Washington, DC 20004

2957-101-260645.1

Kozyak Tropin & Throckmorton, P.A.
200 South Biscayne Boulevard, Suite 2800 , Miami, Florida 33131 • Tel. 305-372-1800